UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROSENZWEIG CENTER FOR RAPID RECOVERY, LLC and HELENE ROSENZWEIG, a/k/a LANEY ROSENZWEIG, | : : : : : | CIVIL ACTION NO. |
| Plaintiffs, | : : | |
| v. | : : | |
| DAVID J. EBAUGH, individually, and d/b/a TRAUMA FOCUSED THERAPY, and d/b/a RAPID TRAUMA PROCESSING, and BREAK FREE, LLC, | : : : : | |
| Defendants. | : : : | MAY 6, 2024 |

## COMPLAINT

Plaintiffs, Rosenzweig Center For Rapid Recovery, LLC ("RCRR") and Helene Rozenzweig ("Laney Rosenzweig"), by and through their attorneys, McCarter & English LLP, and as for their Complaint against Defendant David J. Ebaugh d/b/a Trauma Focused Therapy, d/b/a Rapid Trauma Processing ("Ebaugh"), and Break Free, LLC ("BFL", together with Ebaugh, the "Defendants"), allege and state as follows:

## NATURE OF THE ACTION

This is an action for: (i) misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a)(2), (3), and (4); (ii) trademark infringement in violation of section 32(I) of the Lanham Act, 15 U.S.C. § 1114; (iii) false designation of origin and trademark and trade dress infringement in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iv) copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*.; (v)

breach of contract; (vi) anticipatory breach of contract; (vii) unfair competition in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*. (CUPTA); (viii) commercial disparagement; (ix) defamation; (x) slander of title; and (xi) breach of commercial good faith and fair dealing.

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over Plaintiffs' Defend Trade Secrets Act of 2016, Lanham Act, and Copyright Act claims pursuant to 18 U.S.C. § 1836 (defense of trade secrets), 15 U.S.C. § 1121 (trademark) and 28 U.S.C. §1331 (federal question), 1338(a) (trademark and copyright).

2.    This Court has subject matter jurisdiction over Plaintiffs' Connecticut common law claims pursuant to 28 U.S.C. § 1338(b) (breach of contract, unfair trade practices, defamation, commercial disparagement and breach of commercial good faith and fair dealing joined with substantial and related federal defend trade secrets, trademark, and copyright claims) and principles of supplemental jurisdiction.

3.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) in that a substantial portion of property that is the subject of this action is situated in the District of Connecticut.

## THE PARTIES

### The Plaintiffs

4.      Helene "Laney" Rosenzweig is a natural person residing at 208 Mohawk Drive, West Hartford, Connecticut 06117 ("Laney").  Laney is also the managing member of Rosenzweig Center of Rapid Recovery, LLC, and a member having a financial interest therein.

5.      Rosenzweig Center for Rapid Recovery, LLC is a Connecticut limited liability company with a principal business address at 208 Mohawk Drive, West Hartford, Connecticut 06117.

### The Defendants

6.      Defendant David J. Ebaugh is a natural person and, a presumed sole proprietor, holding himself out, and operating under the business name, "Trauma Focused Therapy," with a publicly listed business address at 2455 NW Marshall St. Suite 7, Portland, Oregon 97210. On information and belief the Defendant owns and operates a business website with a website address of www.traumafocusedtherapy.com (the "Trauma Website").  The Trauma Website was privately registered with Go Daddy LLC on November 11, 2017, and has a Registry Domain ID: 2142039004_DOMAIN_COM-VRSN, and copyright ownership of the Trauma Website which content is asserted in the name of J. Ebaugh.

7.      On information and belief, Defendant Ebaugh is a sole proprietor holding himself out and operating under the business name "Trauma Focused Therapy," and in connection therewith owns and operates a business website with a website address of www.untalktherapy.com (the "Alternative Website").   The Alternative Website was privately registered with Go Daddy LLC on June 13, 2016, and has a Registry Domain ID:

2035335977_DOMAIN_COM-VRSN and copyright ownership of the Alternative Website content is asserted in the name of J. Ebaugh.

       8.     Upon inspection, the Trauma Website and Alternative Website each have the same or substantially the same content (the two websites being referred to collectively and as to each (the "Ebaugh Website").

       9.     Defendant Ebaugh also, on information and belief, is a sole proprietor holding himself out and operating under the business name "Rapid Trauma Processing," and in connection therewith owns and operates a website with a website address of www.rapidtraumaprocessing.com (the "Concealed Website"). The Concealed Website was privately registered with Tucows Domains, Inc. on June 9, 2023, and has a Registry Domain ID: 2035335977_DOMAIN_COM-VRSN and copyright ownership of the Concealed Website content is asserted by Rapid Trauma Processing.

      10.     Defendant Ebaugh in his many personal business capacities holds himself out as a licensed clinical social worker ("LCSW") offering therapy services to assist clients in overcoming trauma, stress, and anxiety directly to consumer clients.  Based upon public information and belief, Ebaugh also provides such services through BFL, a health insurance coverage eligible provider that Ebaugh controls.

      11.     Defendant, Break Free LLC, is an Oregon limited liability company with a registered principal place of business at 1409 NW 23rd Avenue, Portland, Oregon 97210 ("BFL").  As disclosed in its most recent annual report filed on September 19, 2023 with the Oregon Secretary of State, David Ebaugh is its manager with an address at 2455 NW Marshall Street Suite 7, Portland, Oregon 97210 ("BFL Manager"), and David Ebaugh is its registered

agent with an address at 1409 NW 23rd Avenue, Suite 2090, Portland, Oregon 97210 (the "BFL Agent").

## **BACKGROUND AND FACTS COMMON TO ALL COUNTS**

### Plaintiffs Business, Property Ownership, Trade Secrets, and Commercial Interests

12.     Plaintiff Helene "Laney" Rosenzweig is a renowned licensed marriage and family therapist conducting practice as "Helene Rosenzweig, LMFT" ("Laney"). She is the sole developer of a proprietary mental health treatment protocol known as Accelerated Resolution Therapy® and/or ART® ("ART").

13.     ART is clinically validated as being able to effectively treat post-traumatic stress, trauma, and anxiety within as few as one to two sessions compared to alternative treatments such as eye movement desensitization and reprocessing ("EMDR") and cognitive behavior therapy ("CBT").

14.     ART entails specific procedural steps using prescribed eye movements along with specific semantic instructions and movement sensation that relieve stress and anxiety.

15.     Plaintiff Rosenzweig Center for Rapid Recovery, LLC, a Connecticut limited liability company ("RCRR"), is an organization founded by Laney and who serves as its managing member.

16.     RCRR is the exclusive master licensee throughout the world having the sole right to (a) promote, offer and train ART to licensed practitioners, (b) to promote, offer, train and certify qualified "trainers" of ART on behalf of RCRR, and (c) to enter into scientific and clinical research arrangements with private and governmental research organizations.  RCRR

either directly or indirectly, through authorized sub-licensees has trained over 10,000 practitioners in ART for over fifteen (15) years.

17.    RCRR, as exclusive licensee, and Laney as founder and licensor, derive financial benefit from ART training services.  Practitioner-trainees pay a training fee to RCRR to be certified in ART.  RCRR offers different levels of courses from basic ART training to advanced ART training.  As its managing and contributing member, Laney provides course content, quality control and on-going practitioner consultation.

18.    Laney and RCRR have taken, and continue to take, diligent steps to keep the ART protocol secret.  RCRR has consistently and continually as matter of business practice required recipients of ART training services to enter into confidentiality agreements as a condition to receiving access to ART proprietary information.  These confidentiality agreements expressly prohibit the unauthorized use of ART information, its disclosure, reproduction, and publication.  Further, any exceptions to these prohibitions are specifically provided in the confidentiality agreement.

19.    The ART protocol and related information and materials embodying its techniques, procedures, and processes, including the use of session scripts, and all information related thereto have been kept secret and have significant commercial value to both RCRR and Laney, thus constitute trade secrets (the "ART Trade Secrets").

20.    The unauthorized disclosure, use, or publication of the ART Trade Secrets would cause commercial and economic harm to the Plaintiffs by enabling others to emulate or copy the proprietary ART protocol for their own use or for the use of others.

21.    The unauthorized disclosure, use, or publication of the ART Trade Secrets would also destroy the exclusive competitive advantage that Laney enjoys as the exclusive developer

and owner of the ART protocol and licensor of ART; deprive RCRR of its exclusive rights as licensee of ART to teach and train ART; and harm Plaintiffs' rights to derive value from the exclusive and controlled commercial use of ART training and certification.

22.     Further, the unauthorized use and/or disclosure of ART Trade Secrets, interferes with the Plaintiffs' rights to control the quality, content, and efficacy of ART, causes confusion in the market, and impairs its reputation and good will built upon in ART as ground breaking, unique, and efficacious mental health protocol.

23.     From its early inception, recognizing the commercial value of ART and the importance of protecting its market identity, RCRR took diligent steps to protect ART Trade Secrets and its corpus of intellectual property by securing registered service trademarks for the ART therapy.

24.     RCRR is the owner of the duly issued and valid United States registered trademark for "Accelerated Resolution Therapy" (U.S. PTO Registration No. 85093079) (the "Accelerated Resolution Therapy® Trademark"),  and "ART" (U.S. PTO Registration No. 77640237) (the "ART® Trademark") (collectively, the "RCRR Trademarks") and Laney is the owner of the duly issued and valid United States registered trademark for "The Art of Rapid Recovery" (U.S. PTO Registration No. 3923149) (the "Rapid Recovery® Mark," and together with the RCRR Trademarks collectively referred to as the  "ART Trademarks").   The Trademarks are registered under the goods and services classification of IC 044: Mental Health Therapy, and are used in conjunction with the training, practice and delivery of ART and are distinctive in relation thereto.   Copies of the trademark registration are attached as **Exhibit A – Trademarks**.

25.     RCRR has continuously used the RCRR Trademarks in commerce since their registration for well over a decade in connection with advertising, sale, and delivery of ART training services and ART therapy. RCRR is also the exclusive licensee of the Rapid Recovery® Trademark for ART training purposes.

26.     Laney is the exclusive owner of the ART protocol and all intellectual property embodied thereby as conceived, created, and developed by Laney, including proprietary and secret know-how, procedures, processes, techniques, therapeutic intervention narratives, patient instructions, and interactions, and copyrights in all originally authored ART works by Laney embodying, representing, describing,  and expressing ART, including, but not limited to, manuscripts, articles, manuals, presentations, scripts, descriptions, procedures, processes, techniques and instructions, charts, diagrams, instructional materials and aids, demonstrations, clinical notes, and clinical data in whatever form or media represented, including in oral, written, photographic and video formats ("Laney Copyrights").

27.     RCRR is the exclusive licensee of Laney's created and owned ART Trade Secrets and Laney Copyrights. Further, RCRR is the owner of original derivative works created by RCRR under the exclusive license from Laney, including manuscripts, articles, manuals, presentations, scripts, descriptions, procedures, process techniques and instructions, charts, diagrams, instructional materials and aids, demonstrations, clinical notes, and clinical data related to ART, in whatever form or media represented, including in oral, written, photographic and video formats (the "RCRR Copyrights", and together with the foregoing Laney Copyrights, "ART Copyrights").

28.     For over a decade, RCRR has continuously used the ART® Trademark and Accelerated Resolution Therapy® Trademark, and Rapid Recovery® Trademark in connection

with its exclusive promotion, offer, and delivery of ART training services and has held and retained the ART Copyrights under exclusive license for itself and for Laney, as licensee of Laney Copyrights, and as owner of the RCRR Copyrights. Laney and RCRR have used ART Copyrights in strict conformity with the provisions of the Copyright Act of 1976 and all other laws governing copyright.

29.     RCRR, as exclusive licensee of ART for training and authorizing research, has a right and a duty to protect and defend the Laney Copyrights, and has the right as owner of the RCRR Copyrights to enforce and protect the RCRR Copyrights, from unauthorized use or infringement in each case.

30.     Laney as owner of the Laney Copyrights has a separate and distinct right in ownership to protect and enforce her Laney Copyrights.

31.     As averred above with respect to ART Trade Secrets, Laney and RCRR each have an economic and financial interest in ART Copyrights. Those copyright materials contain or embody ART Trade Secrets. Neither Laney nor RCRR has alienated, sold, transferred, or abandoned their respective rights therein nor voluntarily disclosed, published or given access to the proprietary ART protocol to any person, or granted any person the right to access, disclose, copy, modify or otherwise use any ART Trade Secrets or ART Copyright material for any reason, except persons under obligations of nondisclosure and then an such access or use is limited to the express purpose of conducting RCRR authorized ART training, to aid a certified ART practitioner in private clinical practice in the treatment of patients, or research by authorized institutions. Further, ART Copyrights are of high commercial value and intrinsically related to the financial viability and prospects of RCRR and Laney.

32.     All of Plaintiffs' properties, including Art Trade Secrets as embodied and the subject of this Complaint are owned, controlled, licensed, and maintained in Connecticut, and those properties are reflected, represented, or contained in the respective books, records, and data systems of Plaintiffs. A substantial portion of those books, records, and data systems are located, controlled, or administratively accessed in Connecticut.

33.     Laney is a disabled person having suffered a stroke on April 3, 2021.  Her condition limits her mobility, speech, and physical endurance.  Since her stroke, Laney's ability to travel outside of the State of Connecticut, especially using air travel, is limited because it involves great physical exertion, raises medical risks and requires medical precautions, and subjects her to pain in the form of muscle spasms when confined, as well as psychological distress due to other highly private personal issues.

34.     Laney's vulnerability to mental distress is heightened by her condition, and further exacerbates her physical condition.

**Defendant Ebaugh, Defendant BFL, their Businesses and Link to ART**

35.     As set forth above, Ebaugh is a licensed therapist offering trauma therapy services, and operates the Ebaugh Website and Concealed Website under various sole proprietorship business names to promote his services. Defendant also operates BFL as its sole managing member and BFL operates a website with domain name www.breakingfreellc.com (the "BFL Website"), where BFL offers mental health services to "break free of their past traumas."  The registration is private, hiding its owner and operator but is presumed to be BFL based upon the content of the BFL Website and its claim of ownership thereon.

36.     The Ebaugh Website description displayed by the Google search engine returns displays "*A trauma therapist specializing in Accelerated Resolution Therapy which helps with*

*PTSD, Phobias, and Anxiety more quickly than conventional therapies.*" A true and correct copy

retrieved from Google on March 14, 2024, is produced below as **Exhibit B – Defendant**

**Website Search Return**:



W David J. Ebaugh, LCSW
https://www.traumafocusedtherapy.com ⋮

### Dave Ebaugh on Accelerated Resolution Therapy

A trauma therapist specializing in Accelerated Resolution Therapy which helps with
PTSD, Phobias, and Anxiety more quickly than conventional therapies.

    37.    In order to take ART basic clinician training, as previously averred, RCRR

requires trainees to enter into a nondisclosure agreement and to provide proof of professional

liability insurance coverage.  On or about May 16. 2016, Defendant Ebaugh took basic ART

training as a clinician through RCRR, and as a condition thereto entered into a certain

Confidentiality, Non-Disclosure and Non-Compete Agreement dated May 16, 2016 (the

"NDA"), a true and correct copy of which is attached as **Exhibit C-1 –NDA**, and also furnished

to RCRR  proof of insurance as required by submitting an insurance coverage certificate to

RCRR.  The proof of insurance submitted by Ebaugh was an insurance certificate listing BFL as

the insured party under which Ebaugh purported to be covered, a true and correct copy of the

Defendants' insurance certificate is attached as **Exhibit C-2 – Insurance Certificate.**

    38.    Section 2 of the NDA provides, *inter alia*, that the "Receiving Party" [Ebaugh]

agrees that he will:

> "*(a) receive and maintain the Confidential Information in strict confidence; ...*
>
> *(c)   not reproduce the Confidential Information or any part thereof without*
> *the express written consent of the [RCRR] ...*
>
> *(d) not directly or indirectly, make known, divulge, publish, or communicate*
> *the Confidential Information to any person, firm, corporation without the*
> *express written consent of [RCRR...*

*(h)  not use the Confidential Information to engage in competition with or train others in the therapy known as Accelerated Resolution Therapy® or ART without the express written permission of the Disclosing Party;*

*(g)  utilize the best efforts possible to protect and safeguard the trademark designations, Accelerated Resolution Therapy® and ART, as well as the Confidential Information from misappropriation, loss, theft, destruction or the like or the like, and further agrees to refer to Accelerated Resolution Therapy® or ART when referring to said therapy."*

39.     Section 1 of the NDA defines the term "Confidential Information" as it:

*"shall mean all technical information and nontechnical information furnished by [RCRR] with respect to Accelerated Resolution Therapy® or ART, including but not limited to, (a) patent(s) or patent applications(s)(sic), trade secret copyrighted information, and proprietary information, i.e., ideas, techniques, theories, methodologies, strategies, sketches, drawings, works of authorship, human or machine readable documents, audio tapes, video tapes, computer disks, models, designs, prototypes, processes, apparatuses, equipment, software programs and software documents."*

40.     Ebaugh took ART training for clinicians on or about May 17-19, 2016 in Palm Desert, California, and received from RCRR instruction and information on theories, techniques, procedures, therapeutic scripts, strategies and related instructional documentation regarding ART to enable Ebaugh to perform and practice ART for his private clinical use with individual clients.

41.     Subsequent thereto, Ebaugh received ART trainer instruction through RCRR on or about June 4-6, 2020 in West Hartford, Connecticut and entered into Facilitator's/Trainer's Contractual Agreement dated October 3, 2020 ("Trainer Agreement") and ART Trainer Agreement for Client Privacy: Recordings dated October 3, 2020 ("Trainer Privacy Agreement" and together referred to as the "Training Agreements"), true and correct copies of which are

attached as **Exhibit D-1 – Training Agreements**.   In connection therewith and as a condition to being able to perform ART training on behalf of RCRR, Defendant Ebaugh submitted a U.S. Treasury Department Form W-9 for BFL, a copy of which is attached as **Exhibit D-2 – Tax Payer ID**, under the guise that all training would be performed through BFL, consistent with his early submission of a BFL insurance liability certificate.

42.      Section 9(c) of the Trainer Agreement provides, *inter alia*, that Ebaugh will <u>not</u>:

> *"...directly or indirectly, use, appropriate, assign, transfer, convert to personal use or the use of others, or disclose any of RCRR's Trade Secrets, Accelerated resolution (ART) protocol and treatment or Confidential Information to any other person."*

43.      Section 9(e) of the Trainer Agreement defines "Confidential Information" as "*RCRR information* [that] *includes, without limitation…instruction manuals, lecture manuals, …outlines, …facilities and methods, systems and procedures."*

44.      Ebaugh was instructed in teaching ART by RCRR and was furnished RCRR information about ART, including being given access to proprietary know-how in methods and procedures, and various copyright materials intended for use by Ebaugh for authorized ART training sessions approved by RCRR.

45.      At all times Ebaugh was an independent contracting party and not an employee of RCRR, nor partner, joint venturer, franchisee of, or held any ownership interest in, RCRR. Likewise, BFL was at no time a partner, joint venturer, franchisee or held any ownership interest in RCRR.

46.      On January 9, 2022, RCRR exercised its right to terminate the Training Agreements and notified Ebaugh that his training credentials for ART were revoked thereunder. Altered as a result of his  continuing misconduct as described in the counts that follow, an

additional written notice reminding Ebaugh of RCRR's exercise of termination was again sent by RCRR to Ebaugh via certified U.S. mail, signature required, on March 25, 2024, at his stated business address as publicly listed on the Ebaugh Website.  This notice was undelivered, indicating Ebaugh refused delivery or was using a knowingly false business address.  RCRR again attempted to send the notice via Priority U.S. Mail on April 6, 2024, to an alternate address in RCRR's business records and was delivered to an unknown individual at another address on April 12, 2024.

47.     BFL is an alter ego of Ebaugh, rendering BFL liable for Ebaugh's conduct, based on the following: (1) BFL is a limited liability company organized by Ebaugh, and is solely controlled by Ebaugh as it managing member; (2) BFL is in the business of mental health services delivery, treating the same conditions treated by ART; (3) Ebaugh used BFL's insurance and taxpayer identity to induce the exchange of valuable information including ART Trade Secrets, and, as a result, BFL enjoys access to such information; (4) Ebaugh holds himself out, and promotes himself, as an ART expert , resulting in BFL enjoying commercial benefit from such publicity and alleged notoriety; and (5) Ebaugh failed to respect any formalities in conducting business between himself and BFL.

**Defendant's Misconduct**

48.     Plaintiffs, on or about January 9, 2024, were alerted by other concerned ART clinicians that Ebaugh was publicly promoting an online ART training course ("Unauthorized ART Training Courses") through a Facebook group site called Pacific Northwest A.R.T. ("NW

ART Site"). A true and correct copy of the posting is attached as **Exhibit E – Northwest FB Promotional ART Training Post.**

49. The NW ART Site, upon knowledge and belief, is comprised of mental health professionals practicing or interested in ART.

50. Ebaugh's message postings on the NW ART Site contain links to the Concealed Website.  Otherwise, except for an obscure link buried on the Ebaugh Website, the Concealed Website is not readily found. The Concealed Website describes the Unauthorized ART Training Courses that Ebaugh is offering and the misappropriated ART Trade Secrets and unauthorized ART Copyright information he is disclosing for commercial gain, stating he will unpack ART and will conduct live ART sessions "in action."  A true and correct copy of the relevant parts of the Concealed Page as of March 15, 2024 is attached as **Exhibit F – Concealed Website Page.**

51. The Concealed Website is directed at "health professionals, therapists, psychologists . . . facilitators and coaches . . .," the same market as in which RCRR operates its business and derives commercial financial benefit through training ART.

52. Ebaugh posted a promotional message on the International Society of Resolution Therapy Facebook Group Site (https://www.facebook.com/groups/isartorg/?locale=gl_ES), which was removed by the administrator upon RCRR's direction, a true and correct copy of which is attached as **Exhibit G – ISART Group Post.**

53. As averred herein below, Ebaugh posted similar promotional messages on other social sites and websites, and may have posted or advertised solicitations in other commercial forums and mediums unknown to Plaintiffs.

54. Ebaugh made, and continues to make, such Unauthorized ART Training Courses available for a fee, intending to derive financial or professional benefit therefrom.

55.     RCRR through emails to, and Laney via telephone conversations with, Ebaugh, requested that Ebaugh disclose the materials and content that Ebaugh would be disclosing and using in his Unauthorized ART Training Courses to determine if there was in fact ART Copyright materials or ART Trade Secret information being used without authorization.  RCRR and Laney each repeatedly advised Ebaugh that RCRR objected to the use of ART confidential and ART Trade Secret information, and reminded Ebaugh that he was under obligations of the confidentiality and nondisclosure agreement with RCRR, and that the disclosure and use of ART confidential and ART Trade Secret information was unauthorized and prohibited, and, further that, he was not authorized to conduct ART training in any form or forum without RCRR's approval.

56.     Ebaugh rebuffed Plaintiffs' requests to inspect his Unauthorized Art Training Course materials.  Ebaugh further misrepresented to RCRR and Laney that he would only be sharing publicly available information, notwithstanding his Concealed Website and advertisements to the contrary.

57.      RCRR then sent by email, via its attorneys, a cease-and-desist letter dated and transmitted on January 31, 2024, to Ebaugh's known email address.  A true and correct copy of the cease-and-desist letter is attached as **Exhibit H – Cease & Desist Letter**. Ebaugh failed to respond and Ebaugh, based upon information and belief, including by the presence of the Concealed Website, continues to hold out and offer the Unauthorized ART Training Courses.

58.     During January through-March of 2024, Ebaugh posted promotional messages and content on various Facebook groups relating to the Unauthorized ART Training Courses.

59.     Upon learning of Ebaugh's promotional postings for the Unauthorized ART Training Courses, RCRR seeking to assert and protect its intellectual property rights, also sent a

16

"take-down" request to the NW ART Site administrators, who, though expressing their concern, declined the request, stating they did not want to get in the middle of a dispute.

60.     RCRR, again seeking to protect its property rights, including its confidential information, copyrights, and trade secrets, then posted a message in the comments of the NW ART Site, alerting users that Ebaugh was unauthorized to disclose or use ART materials or information and had no authority to conduct ART training.  Messages regarding his unauthorized disclosure of ART proprietary information were also posted on the Facebook group site, "Accelerated Resolution Therapy Community of Practice" (the "ART Community Site"), which is comprised of ART clinicians throughout the United States.

61.     Ebaugh then posted a public reply on the ART Community Site falsely asserting that ART was developed by the University of South Florida and Department of Defense using taxpayer dollars, and further falsely contending that he, Ebaugh, had the right to disclose and use ART, defaming Laney and her professional reputation and skills, damaging the reputation of ART as a therapy, and disparaging, by direct implication, RCRR and its exclusive rights.

62.     Upon further investigation, Plaintiffs uncovered that Ebaugh posted public unauthorized videos on YouTube that disclosed ART, in particular, describing a proprietary script developed by Laney and exclusively licensed to RCRR called the "Annoyances List" © Helene Rosenzweig script, an original copyright protected work of Laney. Ebaugh's video description and performance of such work infringes upon Laney's Copyrights therein, and constitutes a misappropriation of valuable ART Trade Secrets and a breach of the NDA.

63.     Ebaugh's actions include: (1) the unauthorized use of the RCRR Trademarks and the confusing use of the term "rapid recovery" in violation of the Rapid Recovery® Trademark in connection with Ebaugh's promotion; (2) the offer, sale and delivery of Unauthorized ART

Training Courses and in his general promotion and offer of mental health services for commercial gain; (3) publicly advertising the intended unauthorized disclosure of ART; (4) making a false statement regarding the ownership and origins of ART; (5) the disclosure and use of ART Copyright materials where undertaken for competitive advantage; (6) the usurpation of RCRR's exclusive business opportunity; and (7) the wrongful conversion of Laney and RCRRs' goodwill for financial gain and unearned professional gain in stature.

64.     RCRR has invested in the promotion and provision of high-quality ART training services for over fifteen years, including generating and applying proprietary clinical data, developing course materials, scripts and other informational aids, and has built professional good will through the quality of delivery, safety and effectiveness of the training it provides. Ebaugh's actions have caused great harm to RCRR's business, not only in usurping an exclusive business opportunity, but also by undermining the perceived quality, reliability, and safety of ART in the marketplace, and inducing others to falsely believe that ART is not a protected trade secret, that Laney has no ownership claim to ART, and the ART Copyright materials are free to use.

65.     Throughout the Ebaugh Website and the Concealed Website, the words "ART" and "Accelerated Recovery Therapy" are used for the promotion of a commercial offering of psychology and therapy services without authorization from RCRR.  The Websites improperly fail to identity such words as registered marks, and fail to provide ownership attribution to RCRR.  The Ebaugh Website is replete with references to "rapid recovery" in relation to mental health services for trauma while also referencing the words ART therapy, creating confusion and trading upon the ART® Trademark, the Accelerated Resolution Therapy® Trademark, and Rapid Recovery® Trademark.  Further, the Concealed Website domain name

18

"www.rapidrecoveryprocessing" contains the key trademark word formulation of "rapid recovery," which creates market confusion and has the effect of trading upon the goodwill and reputation of the mark in relation to the ART protocol.  The Concealed Website also contains descriptive services related to ART, which create confusion and a false impression of endorsement.

66.     Over the past decade, millions of dollars of ART training services have been sold by RCRR in the United States.

67.     The RCRR Trademarks and the ART Copyright materials are famous under § 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), as (1) RCRR has extensively used the registered RCRR Trademarks and ART Copyright materials in the promotion of ART,  (2) Laney—who's professional reputation is as a pioneer in her field and the developer of the ART protocol— presented in the highly regarded TED Talk forum regarding the ART protocol, (3) renowned institutions have made the ART protocol the subject of clinical research publications (many of which are cited the Ebaugh Website), and (4) over 10,000 mental health professionals are trained in and use ART to treat consumers across the United States.

68.     The Ebaugh Website contains an embedded TEDx Talk video of Laney's TEDx performance, "The ART of Rapid Recovery | Laney Rosenzweig | TEDxSpringfield" (https://www.youtube.com/watch?v=vP7dx03arxI )("Laney's TED Talk") which is associated with Ebaugh's commercial ART services.

69.     The use of Laney's name, image and likeness in Laney's TED Talk is limited to TED Conferences LLC's usage and license polices.  At no time did Laney or RCRR grant Ebaugh any right to redistribute, display, perform, rebroadcast or in any way use Laney's name,

image, or likeness, or her performances to promote, advertise, or endorse Ebaugh or his commercial training services.

70.     Defendant BFL is a beneficiary of Ebaugh's unscrupulous conduct and a co-conspirator, or abettor and instrumentality, of Ebaugh's conduct in that Ebaugh solely controls BFL.  Ebaugh used BFL's insurance coverage and taxpayer ID to induce RCRR into falsely believing Ebaugh was acting solely for the purpose of performing ART as a licensed clinician under BFL and subsequently an authorized ART trainer under BFL.   Either Ebaugh patients are referred to BFL through the Ebaugh Websites, thus a knowing and intended beneficiary of Ebaugh's unlawful activities, or Ebaugh treats patients with ART directly without professional liability insurance as a licensed professional having materially misled RCRR for his own personal benefit.  Further, though Ebaugh Websites refer to, and offer training services using ART Trademarks, BFL does not, further establishing Ebaugh wrongfully used BFL to induce RCRR to furnish ART trainer services for himself rather than BFL under false pretenses.

71.     Defendant Ebaugh's sole control over BFL, the commingling of business transactions, the provision of BFL business information and his conduct in redirecting or reserving business opportunities for himself rather than BFL, demonstrates that Ebaugh failed to follow the most basic of required business formalities, used BFL as tool and means of business deception and is an artifact. This is further evidenced, as averred above, by the fact that in each instance Ebaugh chose to conceal the public identity of his website ownership, despite having an absolute duty of professional accountability to consumers as a licensed social worker to not engage in dishonesty, fraud or deception.

## IRREPARABLE HARM TO PLAINTIFFS

72. Defendants' unscrupulous conduct described above has caused, and continues to cause, irreparable harm to both Laney, as owner, and RCRR as licensee and owner, of ART Trade Secrets. The public disclosure of trade secrets by its very nature damages and undermines their value because their commercial value lies in their secrecy and controlled disclosure by the owner and authorized licensee. The ART Trade Secrets represent the essential commercial value of the RCRR enterprise and uniqueness of the ART protocol and related training services.

73. By its nature, the ART protocol is comprised of know-how together with prescribed procedures, techniques, methods, and associated narrative scripts to be used by authorized clinicians trained in the art of ART, and its realizable economic value is achieved through the offer and sale of ART training services for value.

74. Defendant Ebaugh's public disclosure of ART Trade Secrets coupled with the unauthorized use of ART Copyright materials provides uncontrolled access to and a roadmap for others to copy, emulate, and reproduce ART training and related services to which RCRR has an exclusive right, and to which Laney, as owner and licensor of the ART Trade Secrets and Laney Copyrights, is solely reliant upon for commercial and financial realization. As such, Defendant Ebaugh's conduct (and overtly hostile and malicious attitude) is a gross deprivation and usurpation of the Plaintiffs' property, business opportunities and future value therein.

75. Defendant Ebaugh's improper use and representation of ART in Unauthorized ART Training Courses is an assault on the integrity of RCRR's ART training services and Laney's ART protocol in that it deprives RCRR of the right to protect the quality, safety, and effectiveness of ART Training, and by direct implication, the quality, safety, and efficacy of ART when taught through unauthorized persons. Consequently, the name, reputation, and

goodwill associated with ART training services and the ART protocol are damaged, impairing their reputation, value, and utilization in the market.

76.      Defendant Ebaugh's public false statements that ART was developed by other parties using taxpayer money and thus is freely usable, is a direct attack on the integrity of Laney and her professional skills and reputation.  Ebaugh's refusal to retract the statement serves as prima facia defamation intended to harm Laney and ART for the purpose of undermining Laney's ownership of ART, and casting a negative light on her skills as a professional and leader in the psychology field. Further, Defendant Ebaugh's public false statements serve as prima facia commercial disparagement by falsely asserting, by direct implication, that RCRR is not an exclusive licensee or valid licensee of ART for training, and that RCRR Copyrights are invalid as not original derivative works of Laney's Copyrights, and it is falsely holding itself out as such.

77.      Defendant Ebaugh either knowingly made such false statements in disregard for the truth or did so in a grossly negligent and intentional manner, and did so with malice to cause embarrassment and distress and to otherwise slander Laney's ownership in ART for Defendants' personal commercial and reputational gain.  The damage caused by Defendant Ebaugh to the stellar professional reputation of a pioneer in her field is irreparable, leaving a public question mark and a shadow over Laney and RCRR among peers in the field of mental health therapy that adversely impairs Laney's and RCRR's future business opportunities.  Likewise, RCRR's commercial interests, name, reputation, and good will are harmed by Defendants' disparagement.

78.      Defendant Ebaugh, while defaming Laney, disparaging RCRR, and using ART Trade Secrets and ART Copyrights on an unauthorized basis, nonetheless, unabashedly usurped their Trademarks to promote pirated Unauthorized ART Training Courses for his own commercial gain and to elevate his own professional stature and the reputation of BFL. He did so

in a way as to confuse consumers, creating a false and misleading impression that Defendants'
ART training services are the same, similar to, affiliated with, or endorsed by RCRR and/or
Laney, further exacerbating commercial and professional injury to RCRR in the first instance,
and Laney, in the second instance.

79.    Defendant Ebaugh's unauthorized and improper use of Plaintiffs' Trademarks,
ART Trade Secrets, and ART Copyright Materials, and his public defamation and commercial
disparagement in their totality, (1) are willful, knowing, and intentional attacks on RCRR's
business and Laney's skills, professionalism and character, and the good will and reputation of
both Plaintiffs, (2) constitutes an outright unlawful conversion of RCRR and Laneys' property
and rights therein, and (3) have caused irreparable disparagement of their title and interests
therein for which there is no repair in light of the manner and means by which Ebaugh engaged
in his unlawful conduct.

80.    Defendants' scheme is harmful to, and will continue to harm, the public in an
especially acute and dangerous way because the nature of Plaintiffs' business is the training and
teaching of a mental health protocol to practitioners for the treatment of persons in need of
mental health intervention.  Consumers are, and will continue be, confused by Defendants'
unauthorized and counterfeit services, and are, and will continue to be, duped into purchasing
inferior, unsanctioned services that they believe to be genuine, endorsed and of the same quality.

81.    Finally, Defendant Ebaugh's defamation of Laney's name, professional reputation
and skills, and her ownership of the ART protocol has caused Laney extreme distress, loss of
sleep, anxiety, and fatigue, further exacerbating her health condition relating to her stoke
impairments, and a sense of professional loss and diminishment.  This becomes more significant

and devastating because Laney is unable to travel and defend her name, reputation, and her claims of ownership and expertise among her peers.

82.    As a direct and proximate result of the foregoing, each of the Plaintiffs, RCRR and Laney, has suffered. Unless Defendants' conduct is enjoined by this Court, the Plaintiffs will continue to suffer irreparable harm, for which each has no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**Misappropriation of Trade Secrets**
**Section 2(b)(1) of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1)**
**(RCRR and Laney v. Defendants)**

83.    RCRR and Laney each repeat and reallege the allegations contained in paragraphs 1 through 82 above, as though fully set forth herein.

84.    The ART protocol is a trade secret and training services relating thereto are offered and sold throughout the United States through interstate commerce.

85.    By Defendant Ebaugh's and Defendant BFL's conduct described above, including, without limitation, the unauthorized disclosure, promotion, and use of the ART protocol, including ART Copyright material, all of which is has been and remains proprietary and secret property owned by Laney and RCRR, as to derivative works and with respect to Laney owned materials exclusively licensed from Laney, is an unlawful misappropriation of trade secrets pursuant to Defense of Trade Secrets Act, 18 U.S.C. § 1836(b)(1).

86.    Defendant Ebaugh did disclose and threatens to disclose Laney's and RCRR's ART Trade Secrets: (i) without the express or implied consent of RCRR and (ii) knowing that information disclosed and threatened to be disclosed were trade secrets by virtue of Defendant Ebaugh being a party to the NDA that unmistakably and expressly defines RCRR's confidential and proprietary information to include, *inter alia*, the ART protocol, and that establishes

Defendant Ebaugh had and has a duty and obligation to keep the same secret and expressly agreed to the same in the NDA, and (iii) such trade secret was obtained from RCRR in the course of training that Defendant received on two occasions, and thereafter from Laney on behalf of RCRR through subsequent consultation calls, and (iv) the trade secret information was not acquired or released by mistake and Defendants Ebaugh's and BFL's actions concealing Ebaugh's intended unauthorized use and disclosure of trade secrets for his personal gain through the Concealed Website negate any such assertion, and (v) Defendant BFL, being under the sole control of Defendant Ebaugh, was knowingly used to aid and abet in Defendant Ebaugh gaining unauthorized access to the ART Trade Secrets by providing false or misleading information to RCRR in the form of insurance certificate and taxpayer IDs that were required by RCRR for Ebaugh to access ART Trade Secrets, or, alternatively, Defendant BFL is a mere alter ago of Defendant Ebaugh.

87.     Defendants' misappropriation was willful and malicious as established by Defendant Ebaugh's disregard of the Cease & Desist Letter and Defendant Ebaugh's subsequent libelous and disparaging statement in a public forum falsely stating Laney did not own the ART protocol, and the misuse of BFL business information to access ART Trade Secrets.

88.     In light of the foregoing, Laney, as owner of the trade secrets, and RCRR as licensee of the ART Trade Secrets for ART training, are entitled to: (a) pursuant to 18 U.S.C. § 1836(b)(3)(A), an underline injunction prohibiting Defendants from further (i) using, disclosing, publishing, or distributing infringing ART Trade Secrets, including proprietary and confidential ART Copyright materials and all other nonpublic information concerning the ART protocol, in whole or part, and inclusive of derivatives thereof, including from producing, distributing, publicly displaying, or performing the ART protocol in connection with the offer or sale of any

ART training services or any other activity (other than the practice of ART in private physical setting for clinical delivery to Defendants' mental health patient-clients), in any forum including at any physical locations, on or through the internet or any other form or medium of expression, and (ii) from otherwise advertising, offering, or engaging in any ART related training services or any other activities (other than the practice of ART in private physical settings for clinical delivery to Ebaugh's mental health patient-clients), whether directly or indirectly, and whether or not for monetary or professional benefit or the direct or indirect benefit of any other person; (b) recover from Defendant damages for unjust enrichment pursuant to U.S.C. § 1836(b)(3)(B)(i)(I), for the misappropriation that has occurred to date; and (c) punitive damages pursuant U.S.C. § 1836(b)(3)(C), to together with the costs of this action.

### SECOND CAUSE OF ACTION
### Infringement of Registered Trademarks
### Section 23 of the Lanham Act, 15 U.S.C. § 1114
### (RCRR and Laney v. Defendants)

89.     RCRR and Laney repeat and reallege the allegations contained in paragraphs 1 through 88 above, as though fully set forth herein.

90.     Defendant Ebaugh's conduct described above, including, without limitation, the unauthorized use in commerce of the Accelerated Resolution Therapy®, ART®, and Rapid Recovery® federally registered trademarks in connection with the promotion, offer, sale and provision of ART training and related services through the Ebaugh Website, the Concealed Website, NW ART Site, ART Community Site, and IS-ART Group Posts is a willful infringement RCRR's registered trademark(s) in violation of section 23 of the Lanham Act, 15 U.S.C. § 1114.

91.     Defendant BFL is an alter ego of Ebaugh and enjoys commercial benefit from Ebaugh's unlawful use of the ART Trademarks.

92.     As explained in detail above, Defendants' conduct is likely to deceive consumers as to the source and origin of the ART training services Defendant Ebaugh purports to offer for a fee.  Ebaugh's misconduct is likely to cause confusion and deceive consumers, in particular mental health professionals, that RCRR has sponsored, authorized, licensed, or endorsed Ebaugh's ART training services in the United States, when it has not.

93.     As a result, each of RCRR and Laney has been, is, and will continue to be, irreparably harmed unless Ebaugh is restrained and enjoined from the unlawful conduct described above.  RCRR and Laney have no adequate remedy at law.

94.     In light of the foregoing, each of RCRR and Laney is entitled to: (a) an injunction prohibiting Ebaugh and persons directly or indirectly affiliated with Ebaugh including BFL, from the continued, direct or indirect offering for sale, selling, or distributing counterfeit and/or infringing ART training services, and to recover from Ebaugh; (b) statutory damages pursuant to 15 U.S.C. § 1117(c) for the infringement that has occurred to date; and (c) the costs of this action pursuant to 15 U.S.C. § 1117(a).

95.     As this is an exceptional case given Defendants' willful acts, pursuant to 15 U.S.C. § 1117(a), each of Laney and RCRR is further entitled to enhanced statutory damages pursuant to 15 U.S.C. § 1117(c).

### THIRD CAUSE OF ACTION
### False Designation & Unfair Competition
### Section 43(a)(1)(b) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)
### (RCRR and Lane v. Defendants)

96.     RCRR and Laney repeat and reallege the allegations contained in paragraphs 1 through 95, above, as though fully set forth herein.

97.     Defendant Ebaugh's unauthorized use of the Trademarks in connection with the unauthorized advertising and offer to sell ART training services, coupled with, *inter alia*, the unauthorized use of Laney's Ted Talk in proximity thereto causes confusion and is intended to deceive consumers into the false and misleading impression that Defendant Ebaugh, and by implication BFL as an alter ego, is affiliated with or endorsed by RCRR or Laney in violation of section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

98.     Each of RCRR and Laney has been, is, and will continue to be, irreparably harmed as a result of Defendant Ebaugh's unlawful and misleading actions, unless Ebaugh is restrained and enjoined from its unlawful conduct, and RCRR has no adequate remedy at law.

99.     In light of the foregoing, Laney and RCRR are entitled to: (a) an injunction prohibiting Defendant Ebaugh and any and all direct or indirect entities or persons affiliated with Ebaugh, including BFL, from any further direct or indirect: (i) using, publishing or distributing infringing ART materials, in whole or part, and derivatives thereof, including from producing, distributing, publicly displaying, or performing ART Copyright materials in connection with the offer or sale of any ART training services in any forum including at any physical locations, on or through the internet or any other form or medium of expression, and (ii) from otherwise advertising, offering, or engaging in any ART related training services or activities, whether

28

directly or indirectly, and whether or not for monetary, professional or the benefit of any other person, and (b) <u>statutory damages</u> pursuant to 15 U.S.C. § 1117(c) for the unlawful conduct that has occurred to date.

100.    As this is an exceptional case given Defendants' willful acts, pursuant to 15 U.S.C. § 1117(a), RCRR and Laney are further entitled to recover enhanced statutory damages pursuant to 15 U.S.C. § 1117(c).

**FOURTH CAUSE OF ACTION**
**Copyright Infringement**
**Copyright Act, 17 U.S.C. § 101 et seq.**
**(RCRR and Laney v. Defendants)**

101.    RCRR and Laney repeat and reallege the allegations contained in paragraphs 1 through 100, above, as if though set forth herein.

102.    The unauthorized disclosure of the "Annoyances List" © Helene Rosenzweig script is an original work under the Copyright Act and is subject to copyright protection under 17 U.S.C. § 101 *et seq.*

103.    As set forth above, Laney is the owner of the "Annoyances List" © Helene Rosenzweig script, and RCRR is the exclusive licensee thereof.

104.    The tangible and human readable and machine-readable ART materials are original copyright works of Laney and RCRR.

105.    By his actions, the Defendant Ebaugh has infringed Laney and RCRRs' copyrights including without limitation, by reproducing such works in whole or in part, or creating unauthorized derivatives thereof, with intent to distribute, display, publicly perform, and/or sell or offer to sell the same in conjunction with or as part of the Unauthorized ART

Training services in direct contravention of Laney and RCRR's exclusive rights under section 106 of the Copyright Act.

106.     As set forth above, Ebaugh's actions were willful and with full knowledge of their illegal and infringing nature.

107.     To date, Laney and RCRR each have complied with all requirements under 17 U.S.C. §§ 101 *et seq.* to acquire and maintain their respective copyrights.

108.     Ebaugh's acts alleged above constitute willful infringement of the ART Copyrights under the laws of the United States, as provided by 17 U.S.C. § 101 *et seq.*

109.     Defendant BFL is an alter ego of Ebaugh and is a beneficiary of Ebaugh's unlawful actions.

110.     Both Laney and RCRR have been, are, and will continue to be irreparably harmed by Ebaugh's infringement, unless he is restrained and enjoined from the further infringement of ART Copyrights.  Neither Laney nor RCRR have an adequate remedy at law.

111.     In light of the foregoing, Laney and RCRR are entitled to: (a) an injunction prohibiting Defendant Ebaugh and any and all direct or indirect entities or persons affiliated with Ebaugh, including Defendant BFL, from further directly or indirectly (i) using, publishing or distributing infringing ART Copyright materials, in whole or part, and derivatives thereof, including from producing, distributing, publicly displaying, or performing ART Copyright materials in connection with  the offer or sale of any ART training services in any forum including at any physical locations, on or through the internet or any other form or medium of expression, and (ii) from otherwise advertising, offering or engaging in any ART related training services or activities, whether directly or indirectly, and whether or not for monetary, professional or the benefit of any other person; and (b) statutory damages pursuant to 17 U.S.C.

§504, for the unlawful conduct that has occurred to date; and (c) the <u>costs of this action</u>, pursuant to 17 U.S.C. §505.

**FIFTH CAUSE OF ACTION**
<u>**Breach of Contract & Anticipatory Breach of Contract**</u>
<u>**(RCRR v. Defendants)**</u>

112.  RCRR repeats and realleges the allegations contained in paragraphs 1 through 111, above, as if though set forth herein.

113.  As described above, Defendant Ebaugh, for himself and ostensibly for or on behalf of BFL, entered into the NDA with RCRR, and the NDA by its terms imposes a continuing obligation upon Ebaugh not to disclose or use RCRR confidential information as described therein.

114.  The NDA is a valid and enforceable contract, RCRR and Ebaugh having freely entered into such agreement, and RCRR having delivered to Ebaugh for his own benefit, and for the benefit of BFL, valuable training services regarding the proprietary and trade secret ART protocol and in consideration therefor and as a condition to such services being rendered, Ebaugh did make covenants and promises therein.

115.  The Training Agreements were valid and enforceable contracts, RCRR and Ebaugh having freely entered into such agreements, and RCRR having delivered to Ebaugh valuable training services regarding the proprietary and trade secret ART protocol, and in consideration therefor and as a condition to such services being rendered, Ebaugh did make covenants and promises therein.  RCRR terminated such Training Agreements with Ebaugh's, though the obligation of confidentiality survived and continued thereunder.

116.  Defendant Ebaugh willfully and knowingly violated, and threatens to continue to violate, the terms of the NDA to which Ebaugh is bound by virtue of (1) publicly disclosing and

performing the "Annoyance List" © Helene Rosenzweig script, which is confidential information under the NDA, and (2) publicly advertising that Ebaugh will "unpack" the ART protocol, which is confidential information under the NDA, and will perform live demonstrations of ART which involve the disclosure and performance of proprietary ART protocol methods, procedures, techniques, and therapy scripts, all of which are confidential information under the NDA.

117.    Ebaugh willfully and knowing violated, and continues to threaten to violate, the terms of the NDA to which Ebaugh is bound by virtue of using the ART protocol, which is confidential information under the NDA, in connection with training of ART through online demonstrations in contravention of the prohibition against the use of any ART confidential information, inclusive of the ART protocol.

118.    Ebaugh willfully and knowingly violated, and threatens to continue to violate, the terms of the NDA to which Ebaugh is bound by engaging in ART training in direct contravention of the prohibition against engaging in ART training except with RCRR's authorization for which no authorization from RCRR was given to Ebaugh.

119.    Ebaugh willfully and knowingly violated, and threatens to continue to violate, his ongoing obligations of nondisclosure under the Training Agreements by publicly advertising that Ebaugh will "unpack" the ART protocol, which is confidential information under the Training Agreements, and will perform live demonstrations of ART which involves the disclosure and performance of proprietary ART protocol methods, procedures techniques and therapy scripts, all of which are confidential information under the Training Agreements.

120.    Ebaugh is knowingly breaching and threatening to continue to breach the NDA and his continuing obligations of confidentiality under Training Agreements in each instance by

virtue of having been sent notice and a demand to cease under the Cease & Desist Letter sent by RCRR to Ebaugh.  Ebaugh's breach and threatened continued breach are willful and intentional by virtue of the fact that Ebaugh continues to promote the Unauthorized ART Training Courses. Further, Ebaugh has publicly disparaged Laney and the ART protocol, which Laney developed and owns, by falsely stating that the ART protocol was not created by Laney, and by implication, that RCRR holds an invalid exclusive license and right to ART training materials, which are confidential in nature and are derived from and embody the ART protocol.

121.    BFL is an alter ego of Ebaugh, and is a beneficiary of his unlawful conduct.

122.    RCRR, as averred above, has suffered, is suffering, and will continue to suffer harm by Defendants' breach of the NDA.

123.    Ebaugh's threatened continued breach of the NDA and Training Agreements will cause irreparable harm to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

124.    RCRR as exclusive licensee, and Laney, as beneficial owner of the ART protocol, are entitled to: (a) an <u>injunction</u> prohibiting Ebaugh and any and all direct or indirect entities or persons affiliated with Ebaugh, including BFL, from directly or indirectly (i) continuing to breach the provisions of the NDA and Training Agreements; (b) the award of damages based on Defendants' breach of the NDA and Training Agreement; and (c) the award of attorneys' fees and costs incurred by Plaintiffs' to enforce the terms of the Training Agreement .

### SIXTH CAUSE OF ACTION
### Unfair Competition
### Connecticut Unfair Trade Practices Act, Conn.  Gen. Stat. § 42-110b(a)
### (RCRR and Laney v. Defendants)

125.    RCRR and Laney repeat and reallege the allegations contained in paragraphs 1 through 124, above, as though fully set forth herein.

126.    The Ebaugh Website and the Concealed Website are accessible by consumers situated in Connecticut through the internet, and his commercial solicitations and comments are accessible by mental health practitioners who are members of the NW ART Site and ART Community Site.  Ebaugh continues to engage in the material misrepresentation by advertising, offering, and selling of ART training services in commerce to Connecticut consumers that are unaware that the Defendants are not authorized to do so.

127.    RCRR has ART practitioners of record in Connecticut both practicing ART in private clinical settings and engaged in ART training.  Defendants' conduct causes confusion, dilutes the quality of the ART protocol and its reputation in the market, disparages the reputation of Laney and the source and organization of the ART protocol, and is intended to cause harm.

128.    By Ebaugh's actions described above, including, without limitation, the unlawful misappropriation of Plaintiffs' ART Trade Secrets, the unauthorized use of the ART Trademarks, the unauthorized use of ART copyright materials, and the resulting and threatened disclosure, distribution and offer for sale of infringing ART training services and proprietary and confidential information in connection therewith, Ebaugh's surreptitious use of the Concealed Website to obscure Defendants' unlawful advertising, offer and sale of unauthorized ART training, coupled with Ebaugh's public disparagement of Plaintiff Laney, her skills and professional reputation, and Laney's original creation and ownership of the ART protocol, establishes willful and intentional misconduct that constitutes unfair competition in violation of Conn, Gen. Stat. § 42-110b(a) .

129.    The manner in which Ebaugh engaged in his primary trade or business actions described herein has been willful, wanton, malicious, undertaken in bad faith, and with the intent to deceive, misrepresent, harm, and damage RCRR and Laney.

130.     Defendant BFL is an alter ego of Ebaugh and is a beneficiary of Ebaugh's unlawful conduct.

131.     As a direct and proximate result of Ebaugh's misconduct, Laney and RCRR have suffered, are suffering, and will continue to suffer irreparable harm for which they have no adequate remedy at law.  Laney and RCRR are therefore entitled pursuant to Conn. Gen. Stat. § 42-110g(a) to: (i) an <u>injunction</u> restraining and enjoining Defendant's further unlawful conduct described above; (ii) <u>punitive damages</u> and such other equitable relief as this Court shall deem necessary and proper to remedy Defendants' willful, wanton, malicious, and bad faith conduct, undertaken with an intent to deceive, misrepresent, harm, and damage Plaintiffs and (iii) Plaintiffs' <u>costs and reasonable attorneys' fees</u> pursuant to Conn. Gen. Stat. § 42-110g(d).

**SEVENTH CAUSE OF ACTION**
**<u>Commercial Disparagement</u>**
**(RCRR v. Defendants)**

132.     RCRR repeats and realleges the allegations contained in paragraphs 1 through 131 above, as if though set forth herein.

133.     Defendant Ebaugh did publicly publish a false statement ("false statement") on the ART Community Site disparaging Laney by stating that Laney was not the creator of the ART protocol and that the University of South Florida and Department of Defense developed the ART protocol, and, further publicly stated, that the ART protocol developed with taxpayer dollars that permitted Ebaugh, and any others by implication, including BFL, to freely use the ART protocol without Laney and RCRRs' authorization.

134.     Ebaugh knew or agreed that the ART protocol was developed by Laney and under the exclusive license of RCRR by virtue of Ebaugh's entering into an NDA with RCRR prior to his public disparagement of Laney.

135.     The ART protocol is a valuable mental health protocol that has been clinically validated as efficacious in published research conducted by well-known and respected research organizations in professional journals.  The Ebaugh Website discloses many of these publications.

136.     Ebaugh's false statement is intentional or grossly negligent and calculated to by association with Laney, as founder and managing member of RCRR, diminish and besmirch the name, reputation and goodwill of RCRR and RCRR's exclusive license to train the ART protocol.

137.     Defendant BFL is an alter ego of Ebaugh and is a beneficiary of his unlawful conduct.

138.     Ebaugh's disparagement was calculated to injure the name and reputation of RCRR, the exclusive licensee of Laney's ART protocol, and/or Defendant knew or should have reasonably foreseen that Defendant's false statement would harm the reputation, good will and rights of RCRR in the market, as Laney' s exclusive licensee of the ART protocol.

139.     As a direct and proximate result of Defendants' false statement, RCRR has suffered, is suffering, and will continue to suffer irreparable harm for which it has no adequate remedy at law.  RCRR is entitled to: (i) an injunction restraining and enjoining Defendant's further and continued unlawful commercial disparagement as described above; (ii) general and special damages to remedy the diminished name, reputation, and good will of RCRR and the licensed ART protocol; and (iii) RCRR's costs and reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION
### Defamation
**(Laney v. Defendants)**

140.    Laney repeats and reallege the allegations contained in paragraphs 1 through 139 above, as if though set forth herein.

141.    As averred, Laney is a person, a licensed mental health professional, and a well-known expert in the mental health field.

142.    Defendant Ebaugh's false statement regarding the origination and development of the ART protocol is sufficient on its face to identify its founder, Laney, by other mental health professionals.

143.    Defendant's false statement was made in writing and published on the ART Community Site, thus is libelous.

144.    Ebaugh's false statement was intentional or grossly negligent, and calculated to, or was foreseeable that it would, impugn Laney's name, reputation, integrity, and skills in a public manner and among peers within her profession.

145.    Ebaugh's false statement was per se malicious, having no other purpose than to attack and diminish Laney's professional creation and work known as ART and her professional reputation and skills by direct implication.

146.    Ebaugh also knew of Laney's impaired condition due to a stroke, having spoken with her on several occasions by telephone, thus further evidencing Defendants' malice.

147.    Defendant BFL is an alter ego of Ebaugh and is a beneficiary of his unlawful conduct.

148.    Ebaugh's defamation of Laney's name, professional reputation and skills and her ownership of the ART protocol has caused Laney extreme distress, loss of sleep, anxiety, and

fatigue, exacerbating her health condition relating to her stroke.  This victimization becomes

more significant and devastating because Laney is unable to travel and easily communicate in

public forums to defend her name, reputation and her claims of ownership and expertise among

her peers.

149.    As a direct and proximate result of Ebaugh's false statement, Laney has suffered,

is suffering, and will continue to suffer irreparable harm for which she has no adequate remedy

at law.  Laney is entitled to: (i) an <u>injunction</u> restraining and enjoining Defendants' further

unlawful defamation as described above; (ii) <u>general and special damages</u> for infliction of

emotional and physical distress caused by Defendant's intentional and malicious false

statements;; (iii) <u>general and special damages</u> for the harm to Laney's name and professional

reputation; and (iv) Laney's <u>costs and reasonable attorneys' fees</u>.

### NINTH CAUSE OF ACTION
### <u>Slander of Title</u>
### (RCRR and Laney v. Defendants)

150.    RCRR and Laney repeat and reallege the allegations contained in paragraphs 1

through 149 above, as if though set forth herein.

151.    By Defendant Ebaugh's knowingly and intentional, or grossly negligent false

statement, he did slander: (i)  Laney's ownership title to the ART protocol and related ART

Trade Secrets and Laney Copyrights; and (ii) the exclusive license rights held by RCRR in and to

the ART protocol, its related ART Trade Secrets and Laney Copyrights, and RCRR's ownership

of RCRR Copyrights relating to ART.

152.    Ebaugh's wrongful actions and false statement have impaired the value of the

ART protocol and related intellectual property, including the ART Trade Secrets and Laney

Copyrights, by making a false claim as to the respective ownership and license rights of the

Plaintiffs, diminishing its marketability and transferability, and thus impairing the value of the property in the marketplace.

153.    Defendant BFL is an alter ego of Ebaugh and is a beneficiary of his unlawful conduct.

154.    As a direct and proximate cause of Ebaugh's false statement, the Plaintiffs have suffered, and will continue to suffer significant harm.  Plaintiffs are entitled to: (i) <u>general and special damages</u> for impairment of the value of their property, and (ii) Plaintiff's <u>costs and reasonable attorneys' fees</u>.


### TENTH CAUSE OF ACTION
### <u>Breach of Covenant of Good Faith and Fair Dealing</u>
### (RCRR v. Defendants)

155.    RCRR incorporates the allegations contained in Paragraphs 1 through 154 above, as though fully set forth herein.

156.    Defendants breached the covenant of good faith and fair dealing by, *inter alia*, (1) willfully breaching the NDA, (2) willfully misappropriating RCRR's contractually protected confidential information and trade secret information, including, but not limited to, the ART protocol and information relating thereto, (3) besmirching Laney's name, professional reputation and skills, and her inventor-ownership in the ART protocol, and (4) engaging in false, misleading, and fraudulent conduct in submitting BFL business information.

157.    Defendants' pattern of conduct establishes a knowing, intentional, and devious scheme to misappropriate Plaintiffs' ART Trade Secrets, the ART Copyrights, unlawfully trade on the Plaintiff's Trademarks, and disparage and defame the Plaintiffs for the purpose of ill-gotten commercial gain.

158.    As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, RCRR has been damaged. RCRR is entitled to: (i) general and special damages, and (ii) Plaintiffs' costs and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.    For judgment finding that:

   a.   Defendants have violated section 2(b)(1) of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1)

   b.   Defendants have violated section 32(I) of the Lanham Act, 15 U.S.C. § 1114;

   c.   Defendants have violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

   d.   Defendants have violated the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*;

   e.   Defendants breached confidentiality obligations under the NDA and continuing obligations of confidentiality under the Training Agreements;

   f.   Defendants have violated Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a);

   g.   Defendants committed the intentional tort of disparagement of RCRR;

   h.   Defendants committed the intentional tort of defamation of Laney;

   i.   Defendants did slander title ownership of Plaintiff Laney's intellectual property, and Plaintiff RCRR's exclusive license rights as licensee thereof;

   j.   Defendants breached a covenant of good faith and fair dealing;

   k.   Defendants acted in bad faith, willfully, intentionally, and/or with reckless disregard for Plaintiffs' respective rights;

2.     That the Court issue an injunction restraining and enjoining Defendants, and of Defendants' direct or indirect affiliates and associated, partners, members, employees, contractors, agents, servants, and attorneys, and all persons in active concert or participation with them, and mandating that Defendants forever cease and desist and refrain in the future from, anywhere in the world:

a.   Directly or indirectly advertising, promoting, sponsoring, organizing, facilitating, offering, or selling any (i) ART training services of any kind or nature for any purpose whatsoever, or (ii) ART therapy, ART education, or ART informational sessions, courses, forums or other mediums for any reason whatsoever related to the training of ART therapy, or making any statements regarding the procedures, methods, techniques, processes, narrative scripts, know-how, operative theories regarding ART, except that Ebaugh individually, solely as licensed mental health practitioner may furnish ART therapy to individual patients in private practice in a one on one physical clinical setting (the limited exception being referred to as "Private Practice");

b.   Using, copying, reproducing, emulating, modifying, creating any derivative works from, publishing, redistributing, rebroadcasting, displaying, replaying, performing, publicly commenting on, or otherwise disclosing or allowing or facilitating access through any forum, medium or means to or for the benefit of Defendants or any other person, the ART protocol, in whole or in part, including its procedures, methods, techniques, processes, narrative scripts, know-how, operative theories in whatever forum or medium embodied or transmissible, whether in human readable, machine-readable form, except rendering

professional opinions and making necessary risk disclosures about ART to individual patients in Private Practice ;

c.  Using the ART Trademarks, including "ART®" and "Accelerated Resolution Therapy®," "The Art of Rapid Recovery®," or the words or word formulations or combinations using "ART,"  "Accelerated Resolution Therapy," or "Rapid Resolution," or any other word formulations of combinations that may be similar for any commercial purpose whatsoever relating to the offer and sale of ART training services, to promote Defendants' professional or commercial reputation, or to disparage, make negative commentary or opinions about, demean, belittle, question the validity of, or otherwise diminish the name, reputation, skill, good will, or ownership rights of Plaintiffs in and to, the ART protocol, ART Trade Secrets, ART trademarks, or the efficacy, its origins or its operative theories of ART, or its similarities to other therapies,

d.  Using, copying, reproducing, emulating, modifying, creating any derivative works from, publishing, redistributing, rebroadcasting, displaying, replaying, performing, publicly commenting on, or otherwise disclosing or allowing or facilitating access through any forum, medium or means to or for the benefit of Defendants or any other entity or person, ART Copyright materials or ART Trade Secrets, in whole or in part, in whatever forum or medium embodied or transmissible, whether in human readable or machine-readable form;

e.  Directly or indirectly advertising, marketing or promoting, including making, using, incorporating, or publishing any written or audio statements, images, videos, illustrations, productions, emulations, patient endorsements or the like that display the ART Trademarks or ART Copyright materials that may convey

or leave an impression with any person that Defendants or any business, persons, associates or others affiliated or associated with Defendants are affiliated with, associated with or endorsed by Plaintiffs;

f.   Making any public statements whether verbal, in writing, or otherwise, to any person or entity regarding this Suit and the exercise of Plaintiffs' rights hereunder , or as to the ART therapy that may in  any way disparage, diminish or tarnish Plaintiffs' name, reputation or good will or the name, reputation or goodwill in ART, including, but not limited to, posting any statements or messages on social media sites, web sites or other electronic forums, where private or public, whether anonymously, using an alias, using a proxy or otherwise;

g.   Otherwise unfairly competing with RCRR or Laney in any manner; and,

h.   Destroying or disposing of any communications, documents, records, or electronic files relating to the use, disclosure or publication of ART Trade Secrets, ART Copyright materials, ART Trademarks, the offer, sale or delivery of ART training services to any person or persons, disparaging or casting Plaintiffs the ART protocol, its origins, its creation, its authenticity its efficacy into question, or the skill, integrity, or competency of Laney or RCRR;

3.   That the Court issue an Order enjoining Defendants and their affiliates, agents, employees, representatives, successors, and assigns from forming or causing to be formed any corporation, partnership, or other entity that engages in any of the conduct described above;

4.   That the Court issue an Order requiring: (a) Defendants immediately take down and remove the Laney Ted Talk Video from the Ebaugh Website, to remove all references to ART, Accelerated Resolution Therapy and Rapid Resolution Therapy from the Ebaugh

Website, <u>except</u> Ebaugh may reference ART to offer of private clinical ART therapy services to individual clients in a one on one physical setting provided such reference use of ART Trademarks with proper registration ® markings along with a conspicuous, human readable ownership attribution statement is in proximity to such marks, and (b) remove any and all direct or indirect references the promotion, offer, sale, instruction or training of ART in any and all mediums or forums.

5.      That both RCRR and Laney be awarded damages for unjust enrichment pursuant to U.S.C. § 1836(b)(3)(B)(i)(I), and punitive damages pursuant U.S.C. § 1836(b)(3)(C) for misappropriation of trade secrets, the sum of **Three Million Dollars ($3,000,000).**

6.      That RCRR be awarded statutory damages of not less than **One Million Dollars** ($1,000,000) per trademark violation pursuant to section 35(c) of the Lanham Act, 15 U.S.C. §1117(c);

7.      That Laney be awarded statutory damages of **Thirty Thousand Dollars ($30,000) per each copyright violation** of the Annoyances List as provided by the Copyright Act, 17 U.S.C. §504;

8.      That RCRR be awarded special and punitive damages from breach of contract as the Court shall deem equitable;

9.      That RCRR be awarded punitive damages for unfair trade practices as this Court shall equitable for a scheme and pattern of willful and intentional misappropriation of trade secrets, trademark violations and copyright violations;

10.      That RCRR be awarded general damages and punitive damages in the amount of **Five Million Dollars ($5,000,000)** for Defendant's intentional tort of disparagement with malice;

11.     That Laney be awarded general damages and punitive damages in the amount of

**Five Million Dollars ($5,000,000)** for Defendant's intentional tort of defamation with malice;

12.     That Laney be awarded general damages and punitive damages for Defendant's slander of title;

13.     That RCRR be awarded general damages and punitive damages for Defendant's slander of title;

14.     That Plaintiffs' respective costs and reasonable attorneys' fees be awarded; and

15.     That such other equitable and legal relief be awarded as the Court shall deem necessary and proper in the interest of justice.

**DEMAND FOR JURY TRIAL**

The plaintiffs, Rosenzweig Center for Rapid Recovery, LLC and Helene Rosenzweig (a/k/a Laney Rosenzweig), hereby demand a trial by jury on all issues so triable pursuant to Rule Fed. R. Civ. P. 38(b)(1).


Dated:  May 6, 2024                              RESPECTFULLY SUBMITTED,


                                                 THE PLAINTIFFS,
                                                 ROSENZWEIG CENTER FOR RAPID
                                                 RECOVERY, LLC and HELENE ROSENZWEIG
                                                 (a/k/a LANEY ROSENZWEIG)
                                                 .


                                     By:    /s/ *David X. Sullivan*
                                            Thomas J. Finn (ct20929)
                                            tfinn@mccarter.com
                                            David X. Sullivan (ct03793)
                                            dsullivan@mccarter.com
                                            McCARTER & ENGLISH, LLP
                                            CityPlace I, 36th Floor
                                            185 Asylum Street
                                            Hartford, Connecticut 06103
                                            Tel: 860.275.6700
                                            Fax: 860.724.3397